**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| | : | |
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **CR NO. 06-715-1** |
| | : | |
| **SYEED BRIGGS** | : | |
| | : | |

_____

**DuBOIS, J.**                                                              **April 11, 2008**

<u>M E M O R A N D U M</u>

## I.      INTRODUCTION

        Presently before the Court are defendant Syeed Briggs's Omnibus Pre-Trial Motions

(Motion for Suppression of Physical Evidence and Motion for Suppression of Statements) (Doc.

No. 109, filed October 12, 2007).  For the reasons set forth below, defendant's Omnibus Pre-

Trial Motions (Motion for Suppression of Physical Evidence and Motion for Suppression of

Statements) are denied.

## II.      BACKGROUND

### A.      <u>Facts</u>

        This case arises out of the armed robberies of the American Heritage Federal Credit

Union in King of Prussia, Pennsylvania, and the Nova Savings Bank in Plymouth Meeting,

Pennsylvania, on or about September 28, 2006, and October 16, 2006, respectively.  On

December 19, 2006, a federal grand jury indicted defendant Syeed Briggs and two co-defendants,

Alfreddie Postell and Markeem Fuller, in connection with these armed bank robberies.  Three

sets of events which took place prior to the filing of charges against defendant are at issue in the

Motions - the issuance of the search warrants dated October 24, 2006, the October 25, 2006

searches of defendant's apartment and automobile, and the October 25, 2006 interrogations of defendant.  The details of those events are set forth below.

1.    __The Issuance of the Search Warrants__

On October 24, 2006, United States Magistrate Judge Jacob Hart issued search warrants authorizing the search of defendant's residence at 243 W. Tulpehocken Street, Apt. B308, Philadelphia, Pennsylvania, and defendant's automobile, a 1995 Chevrolet Lumina, VIN #2G1WL52M4S114844.  The search warrants were issued on the basis of supporting affidavits submitted by Special Agent Kenneth Vincent of the Federal Bureau of Investigation ("FBI").  Gov't Ex. 1, 2 (received in evidence at the Suppression Hearing, Tr. 10/29/07 at 10).  The affidavits were based largely upon a statement given to law enforcement agents by Alfreddie Postell, one of defendant's co-conspirators.  See Gov't Ex. 1, 2.

The two affidavits submitted by Special Agent Vincent to Magistrate Judge Hart are identical in all material respects.  Each affidavit states that Special Agent Vincent and other investigators interviewed Alfreddie Postell on October 23, 2006, regarding the October 16, 2006 armed robbery of the Nova Savings Bank in Plymouth Meeting, Pennsylvania.  Gov't Ex. 1, ¶ 8; Gov't Ex. 2, ¶ 8.  According to the affidavits, the statement Postell gave to the agents was "contrary to his own interests" and contained "numerous facts that would not be known to anyone other than investigators and persons who had direct knowledge of the robbery of the Nova Savings Bank."  Id.

The affidavits recite that Postell told investigators that he planned and executed the robbery of the Nova Savings Bank with three other people, including defendant.  Gov't Ex. 1, ¶¶ 8-11; Gov't Ex. 2, ¶¶ 8-11.   Specifically, the affidavits state that Postell told investigators the

following:

Postell had known defendant "for quite a few years" and "went to public school with him."  Gov't Ex. 1, ¶ 8; Gov't Ex. 2, ¶ 8.  Defendant "grew up at 4845 North Hutchinson Street, Philadelphia, PA, [defendant's] parents still reside there, and [defendant] frequents that location," and Postell resided at 4839 North Hutchinson Street, Philadelphia, PA.  Id.

On October 16, 2006, the day of the Nova Savings Bank robbery, defendant "provided a blue, four door, 1995 Chevrolet Lumina, which belonged to [defendant's] family, to use in the robbery."  Gov't Ex. 1, ¶ 9; Gov't Ex. 2, ¶ 9.  After the completion of the robbery, the men counted and split up the money at defendant's apartment.  Gov't Ex. 1, ¶ 11; Gov't Ex. 2, ¶ 11.

The affidavits further state that law enforcement agents took various steps to verify information provided by Postell.  First, on October 20, 2006, "surveillance observed [defendant] operating a light blue 1995 Chevrolet Lumina."  Gov't Ex. 1, ¶ 12; Gov't Ex. 2, ¶ 12.  A check of Department of Motor Vehicles records showed that the registration for the vehicle had been issued to "PAK Auto Tag, Insurance, and Income Tax Service," and investigation at PAK "revealed that the registration had been issued to Syeed M. Briggs, . . . whose address on his driver's license is 4845 North Hutchinson Street, Philadelphia, PA."  Id.  Second, on October 24, 2006, agents performed a check of Public Source Records, which "showed 243 West Tulpehocken Street, Apartment B308, Philadelphia, PA 19144 as the current address for" defendant.  Gov't Ex. 1, ¶ 13; Gov't Ex. 2, ¶ 13.

2.       **The October 25, 2006 Search of Defendant's Apartment and Automobile**

a.       **Search of the Apartment**

On October 25, 2006, Special Agent Vincent and other law enforcement officers executed the search warrant at defendant's apartment. Tr. 10/29/07 at 12. While certain details of the search are disputed, see Section III of this Memorandum, it is undisputed that law enforcement agents forcibly entered defendant's apartment at approximately 7:13 a.m. on October 25, 2006, and observed defendant in the hallway near the front bedroom. See Tr. 10/29/07 at 13, 101. During the search, law enforcement agents recovered, among other items, "documents showing residence and occupancy, $2,751.00 in U.S. currency, and three bank straps." Gov't Omnibus Resp. in Opp. to Def. Syeed Briggs's Pretrial Motions (Doc. No. 113, filed 10/19/07) at 3. After the discovery of the bank straps, Special Agent Vincent recognized one of the bank straps as consistent with the straps used by the American Heritage Federal Credit Union, told defendant he was being detained, and read defendant his Miranda rights. Tr. 10/29/07 at 15-16, 105-06. Officers from the Plymouth Township Police Department transported defendant to the Plymouth Township police station. Gov't Omnibus Resp. at 3.

b.       **Search of the Automobile**

At approximately 1:55 p.m. on October 25, 2006, Special Agent Lash, Detective Jeffrey McGee of the Plymouth Township Police Department, and Detective Jeremy Johnson of the Upper Merion Township Police Department conducted a search of defendant's automobile at the Plymouth County Police Department. Id. at 3-4; Tr. 10/29/07 at 62-63. During the search, the officers found a pink money wrapper in the amount of $250.00 under the driver's seat. Gov't Omnibus Resp. at 4. In the trunk, the officers found a "green 'canvas' briefcase-style bag with

-4-

shoulder strap" and a "torn piece of manilla paper" with the words "$10,000 Right Now; You got

1 min; No Dye; No Cops; No False Movement," written on it.  Id.

   **3.**      **The October 25, 2006 Custodial Interrogations of Defendant at the Plymouth Township Police Department**

   **a.**      **The First Interview**

Defendant's first interview at the Plymouth Township Police Department began just

before 11 a.m. on October 25, 2006.  Gov't Ex. 4 at 1 (received in evidence at the Suppression

Hearing on October 29, 2007, Tr. 10/29/07 at 54).  Prior to the commencement of the interview,

defendant was advised of his constitutional rights by Detective McGee and he signed an advice

of rights waiver form stating that he understood his rights and that he was willing to talk to the

law enforcement agents and to give a voluntary statement.  Tr. 10/29/07 at 51-53; Gov't Ex. 3

(received in evidence at the Suppression Hearing on October 29, 2007, Tr. 10/29/07 at 52).

   During the course of the interview, defendant gave a detailed statement describing his

role in the planning and execution of the robberies of the American Heritage Federal Credit

Union and the Nova Savings Bank, and identifying his co-conspirators and describing their roles

in the robberies.  Gov't Ex. 4.  At the end of the interview, defendant signed the typewritten

record of the interview.  Id.  In the interview as recorded, defendant denied being under the

influence of drugs or alcohol during the interview, denied being "coerced, threatened, or

promised anything to give [the] statement," stated that he was treated well during the interview,

and affirmed that everything he told the officers was the truth.  Id. at 5-6.

      b.     **The Second Interview**

Defendant's second interview at the Plymouth Township Police Department began

shortly after 2 p.m. on October 25, 2006.  Gov't Ex. 6 (received in evidence at the Suppression

Hearing on October 29, 2007, Tr. 10/29/07 at 64-65).  Prior to the commencement of the

interview, defendant was again advised of his constitutional rights by Detective McGee and

signed a second advice of rights waiver form stating that he understood his rights and that he was

willing to talk to the law enforcement agents and to give a voluntary statement.  Tr. 10/29/07 at

63; Gov't Ex. 5 (received into evidence at the Suppression Hearing on October 29, 2007, Tr.

10/29/07 at 64-65).

During the course of the second interview, defendant admitted that he was the one who

wrote the demand note found in the trunk of his car.  Gov't Ex. 6 at 2.  Defendant also told the

interviewing officers that the bank straps found in his apartment came from the first robbery (the

robbery at the American Heritage Federal Credit Union).  Id. at 3.  At the end of the interview,

defendant signed the typewritten record of the interview.  Id.  In the interview as recorded,

defendant denied being "coerced, threatened, or promised anything to give [the] statement," and

affirmed that everything he told the officers was the truth.  Id. at 3.

**B.**    <u>**Procedural History**</u>

On December 19, 2006, a federal grand jury returned a five-count Indictment against

defendant, Markeem Fuller, and Alfreddie Postell, charging the men with conspiracy to commit

armed bank robbery in violation of 18 U.S.C. § 371 (Count One), bank robbery with a dangerous

weapon, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2113(d) and 2 (Counts

Two and Four), and using and carrying a firearm in furtherance of a crime of violence, and aiding

and abetting the same, in violation of 18 U.S.C. §§ 924(c)(1) and 2 (Counts Three and Five).

The charges arose out of the armed robberies of the American Heritage Federal Credit Union in

King of Prussia, Pennsylvania, and the Nova Savings Bank in Plymouth Meeting, Pennsylvania,

on September 28, 2006, and October 16, 2006, respectively.

On November 6, 2007, a federal grand jury returned a five-count Superseding Indictment,

again charging defendant with conspiracy to commit armed bank robbery in violation of 18

U.S.C. § 371 (Count One), bank robbery with a dangerous weapon, and aiding and abetting the

same, in violation of 18 U.S.C. §§ 2113(d) and 2 (Counts Two and Four), and using and carrying

a firearm in furtherance of a crime of violence, and aiding and abetting the same, in violation of

18 U.S.C. §§ 924(c)(1) and 2 (Counts Three and Five).  Having already pled guilty, Markeem

Fuller and Alfreddie Postell were not charged in the Superseding Indictment.

On October 12, 2007, defendant filed his Omnibus Pre-Trial Motions (Motion for

Suppression of Physical Evidence and Motion for Suppression of Statements) (Doc. No. 109)

and a supporting Memorandum of Law (Doc. No. 110).   On October 19, 2007, the Government

filed its Omnibus Response in Opposition to Defendant Syeed Brigg's Pretrial Motions.  The

details of the Motions and the Response thereto are discussed in Section II.C. of this

Memorandum.  The Court held a hearing on the Motions on October 29 and 30, 2007.  At the

conclusion of the hearing, the Court ruled from the Bench and denied defendant's motions.  Tr.

10/30/07 at 64-77; Order of October 30, 2007 (Doc. No. 126, filed November 1, 2007).  The

Court articulated several reasons for its ruling, which are explained in Section II.D. of this

Memorandum.  To the extent this Memorandum goes beyond the oral ruling from the Bench, the

Memorandum controls.

-7-

The case proceeded to trial on November 13, 2007.  On November 19, 2007, after a five day trial, a jury found defendant guilty of Counts One, Two, Three, Four, and Five of the Superseding Indictment.  Tr. 11/19/07 at 69-70.  On March 25, 2008, this Court sentenced defendant to, *inter alia*, 32 years and one day imprisonment.  The 32 year sentence was based on the mandatory minimum sentences on the two 18 U.S.C. § 924(c)(1) counts - 7 years and 25 years, respectively.  The Guideline imprisonment range for the two bank robberies was 70 to 87 months.  Tr. 3/25/08 at 10.  In view of the length of the term of imprisonment on the two 18 U.S.C. § 924(c)(1) counts, and with the agreement of the Government, the Court imposed a term of 1 day imprisonment on the bank robbery counts.

C.    **Defendant's Omnibus Pre-Trial Motions (Motion for Suppression of Physical Evidence and Motion for Suppression of Statements)**

   1.    **Defendant's Omnibus Pre-Trial Motions**

Defendant's Omnibus Pre-Trial Motions included a Motion for Suppression of Physical Evidence and a Motion for Suppression of Statements.  In his Motion for Suppression of Physical Evidence, defendant sought to suppress physical evidence seized from his apartment and automobile on two grounds.  First, defendant argued that evidence seized from both the apartment and the automobile should be suppressed because the affidavits supporting the Government's application for the search warrants did not contain "probable cause to believe that any evidence of a crime would be found within the defendant's apartment or automobile."  Def.'s Omnibus Pre-Trial Mot. at 3.  Specifically, defendant argued that the affidavits did not establish probable cause because they contained "only general averments" and were "overly broad."  Def.'s Mem. of Law at 2.  Second, defendant argued that evidence seized from his apartment

should be suppressed because officers executing the warrant failed to abide by the knock-and-announce rule.  Def.'s Omnibus Pre-Trial Mot. at 2.[1]

In his Motion for Suppression of Statements, defendant sought to suppress "inculpatory statements attributed to him by the Government."  Id. at 1.  Defendant argued that these statements should be suppressed because (1) he was not given his Miranda warnings prior to being questioned; (2) even if he was given his Miranda warnings, he did not voluntarily, knowingly, or intelligently waive his rights; and (3) the statements were the result of an illegal arrest "without probable cause to allow the agents to conclude that the defendant was somehow involved with the illegal activities they were then investigating."  Id. at 4-5.  In terms of the waiver of his constitutional rights, defendant argued that he was unable to give a knowing, intelligent, and voluntary waiver because of his "ingestion of alcohol and his very recent use of drugs."  Def.'s Mem. of Law at 4.  Further, defendant argued that interrogating agents coerced him into giving a statement by insisting that he "'give them something' which, they contended, would allow them to consider releasing the defendant on bail."  Id.

---

[1] In a *pro se* Letter/Motion dated October 14, 2007, defendant raised a third issue related to his Motion for Suppression of Statements.  Specifically, defendant informed the Court that he wanted to challenge the authenticity of the search warrants and asked the Court to investigate the matter and to include the issue on the agenda for the Suppression Hearing.  (Doc. No. 115, filed 10/19/07).  At the Suppression Hearing, defense counsel explained that defendant wanted to verify that search warrants for defendant's apartment and automobile were "duly issued and approved" and "properly in place at the time that the search warrants were executed."  Tr. 10/29/07 at 83.  On October 29, 2007, the Court obtained the original search warrants from the file in the Clerk's Office and verified that the warrants were properly issued and signed on October 24, 2006.  Id. at 95, 126; Tr. 10/30/07 at 2-3.

2.      **Government's Omnibus Response in Opposition to Defendant Syeed Briggs's**
        **Pretrial Motions**

On October 19, 2007, the Government filed its Omnibus Response in Opposition to

Defendant Syeed Briggs's Pretrial Motions (Doc. No. 113), in which it contested each of

defendant's claims.

In relation to the Motion for Suppression of Physical Evidence, the Government first

argued that the search warrant affidavits properly established probable cause.  Gov't Omnibus

Resp. at 5.  The Government emphasized that Postell implicated himself in his statement to

Agent Vincent and other investigators and that "Postell's description of [defendant] and

[defendant's] involvement in the robbery was highly detailed."  Id. at 7.  The Government also

stressed that "[a]s noted in the affidavits, the detailed information provided by Postell about the

robbery would not have been known by anyone other than the investigators and persons who had

direct knowledge of the robbery."  Id. at 8.  The Government further noted that agents "further

corroborated Postell's information about [defendant] by conducting surveillance of [defendant]

as [defendant] operated his car and by confirming [defendant's] address through public records."

Id.  Finally, the Government argued that, even if the "warrant affidavits did not establish a

substantial basis for the magistrate's findings of probable cause, . . . the agents' reliance on the

warrants should be upheld by application of the good faith exception to the exclusionary rule."

Id. (Citing United States v. Leon, 468 U.S. 897 (1984)).

The Government next argued that the knock-and-announce rule provides no basis to

suppress the physical evidence seized from defendant's apartment.  Gov't Omnibus Resp. at 9.

The Government argued that there was no violation of the knock-and-announce rule because the

-10-

officers dispatched to execute the search "knocked on the door, identified themselves, announced

that they were there to conduct a search, and then waited 45 seconds before entering the

apartment."  Id.  The Government further argued that, even if there was a violation of the knock-

and-announce rule, under the United States Supreme Court decision in Hudson v. Michigan, 547

U.S. 586 (2006), "the exclusionary rule does not apply to violations of the knock-and-announce

rule."  Gov't Omnibus Resp. at 9.

      In addressing defendant's Motion for Suppression of Statements, the Government first

argued that "there can be no doubt" that law enforcement agents advised defendant of his

Miranda rights before any custodial interrogation began.  Id. at 12.  The Government then

disputed defendant's claim that any waiver of his Miranda rights was involuntary due to

ingestion of drugs and alcohol or police coercion.  First, the Government noted that defendant

explicitly denied being under the influence of drugs or alcohol during his first interview at the

police station and that Agent Vincent observed and spoke to defendant during the search and saw

no signs that defendant was under the influence of drugs or alcohol.  Id. at 12-13.  Next, the

Government argued that officers did not coerce defendant into answering questions and noted

that defendant explicitly denied being coerced into giving his statement during the interview.  Id.

at 13.

      Finally, the Government contested defendant's claim that his post-arrest statements

should be suppressed because his arrest was unsupported by probable cause.  The Government

emphasized that, prior to defendant's arrest, Special Agent Vincent found a bank strap in

defendant's apartment which was consistent with the straps used by one of the banks that was

robbed, and that the strap further corroborated Postell's statements that defendant participated in

the robbery of the Nova Savings Bank and that the men divided the money at defendant's apartment. Id. at 14. The Government concluded that the "detailed information provided by Postell . . . together with the evidence seized from [defendant's] Apartment, clearly showed that there was probable cause to believe that [defendant] participated in the robbery of the Nova Savings Bank, thus justifying [defendant's] arrest." Id.

     3.     **Defendant's Reply to the Government's Omnibus Response in Opposition to Defendant's Pre-Trial Motions**

On October 26, 2007, defendant filed a Reply Memorandum to the Government's Omnibus Response in Opposition to Defendant's Pre-Trial Motions (Doc. No. 120). Defendant's Reply added no new issues to his Motions.

     4.     **Suppression Hearing**

The Court held a hearing on defendant's Omnibus Pre-Trial Motions on October 29 and 30, 2007. At the hearing, defendant presented two additional arguments in support of his Motions beyond those included in his written submissions. First, in relation to the Motion for Suppression of Physical Evidence, defense counsel stated his intention to question Special Agent Vincent about representations in the supporting affidavits for the search warrants to find out "[w]here that information came from, whether there's [sic] any misrepresentations in there, whether there's [sic] any exaggerations in there, whether there's [sic] any untruths in there." Tr. 10/29/07 at 5. Second, in relation to the Motion for Suppression of Statements, defendant argued that the inculpatory statements he gave to law enforcement agents after his arrest should be suppressed because law enforcement agents continued to question him after he stated that he did not want to answer any questions until he learned whether or not his mother was going to retain

an attorney for him.  See Tr. 10/29/07 at 74; Id. at 112, 114, 124.

At the hearing, the Court received testimony from two FBI agents assigned to the case and from defendant.  Special Agent Kenneth Vincent testified about his role as the affiant for the search warrant applications for defendant's apartment and automobile and about the execution of the search of defendant's apartment on the morning of October 25, 2006.  Tr. 10/29/07 at 8-47.  Special Agent Andrew Lash testified regarding two post-arrest interviews conducted by law enforcement personnel with defendant at the Plymouth Township Police Department on October 25, 2006.  Tr. 10/29/07 48-82.  In his testimony, defendant provided the Court with his version of the events of October 25, 2006, including both the search of his apartment and the interviews at the Plymouth Township Police Department.  Tr. 10/29/07 at 100-150; Tr. 10/30/07 at 7-48.

**D.      This Court's Ruling from the Bench on Defendant's Omnibus Pretrial Motions**

On October 30, 2007, at the conclusion of the Suppression Hearing, the Court ruled from the bench and denied defendant's motions in their entirety.  Tr. 10/30/07 at 64-77; Order of October 30, 2007 (Doc. No. 126, filed November 1, 2007).  The Court's ruling can be summarized as follows:

**1.      Motion for Suppression of Physical Evidence**

**a.      *Franks* Hearing**

On October 29, 2007, the first day of the Suppression Hearing, the Court allowed defendant to proceed with a Franks hearing after defense counsel stated his intention to question Special Agent Vincent about the source and accuracy of various representations in the supporting affidavits for the search warrants.  Tr. 10/29/07 at 5-7.  The Court advised the Government that if it needed additional time to prepare its response to defendant's Franks allegations, such time

would be given, but the Government elected to proceed with the <u>Franks</u> hearing.  <u>Id.</u> at 7.  At the

end of the Hearing, the Court found that there was no substantial preliminary showing, and in

fact no evidence whatsoever, that Special Agent Vincent "included anything in the affidavit or

omitted anything from the affidavit with reckless disregard for the truth" that would entitle

defendant to a <u>Franks</u> hearing.  Tr. 10/30/07 at 66; <u>Franks v. Delaware</u>, 438 U.S. 154 (1978).

### b.  **Knock-and-Announce Rule**

Next, the Court found that there was no violation of the knock-and-announce rule and

suppression of physical evidence seized from defendant's home on this ground was not

warranted.  Tr. 10/30/07 at 67.  The Court found credible the testimony of Special Agent Vincent

that the law enforcement agents dispatched to execute the search warrant for defendant's

residence on the morning of October 25, 2006, "knocked, announced, waited approximately 45

seconds and then entered."  <u>Id.</u>  The Court further found that there was no evidence presented

which contradicted this version of events.  <u>Id.</u>  Finally, the Court noted that under the Supreme

Court opinion in <u>Hudson v. Michigan</u>, 547 U.S. 586 (2006), even if there was a violation of the

knock-and-announce rule, suppression of the physical evidence seized from defendant's

apartment still would not be warranted.  Tr. 10/30/07 at 67.

### c.  **Probable Cause**

The Court then addressed the question of "whether there was a substantial basis for the

Magistrate Judge's probable-cause determination," <u>id.</u>; <u>Illinois v. Gates</u>, 462 U.S. 213, 236-37

(1983), and found there was a substantial basis for the Magistrate Judge's probable cause

determination, for two reasons.  First, the Court found no cause for concern in the fact that the

affidavits offered in support of the search warrant applications were based largely upon

statements of one of defendant's co-conspirators, Alfreddie Postell.  The Court emphasized that

Postell implicated himself in his statement to law enforcement agents and that his statement was

highly detailed in identifying defendant and the connection of defendant's automobile and

apartment to the robbery of the Nova Savings Bank on October 16, 2006.  Tr. 10/30/07 at 69.

Second, the Court noted that law enforcement agents verified some of the information provided

by Postell in advance of seeking the search warrants.  Id. at 69-70.  Finally, the Court found that,

"even if the affidavits did not establish probable cause," the law enforcement agents' reliance on

the warrants fell within the good faith exception to the exclusionary rule, and thus suppression of

the physical evidence was not warranted in any event.  Id. at 70-71 (citing United States v. Leon,

468 U.S. 897 (1984)).

> **2.** **Motion for Suppression of Statements**

> **a.** ***Miranda* Warnings**

Turning to the Motion for Suppression of Statements, the Court first found that Miranda

warnings were given to defendant on three separate occasions - once by Special Agent Vincent at

defendant's apartment and twice at the Plymouth County Police Department (before each

interview of defendant by law enforcement agents) - and thus, suppression of defendant's

statements for failure to give Miranda warnings was not warranted.  Tr. 10/30/07 at 70.  The

Court emphasized that it found "credible the testimony of the agents regarding the giving of the

Miranda warnings," and that defendant had signed two advice of rights forms indicating that he

had been advised of his constitutional rights prior to questioning.  Id.; Gov't Ex. 3, 5.  The Court

also found that "there was no custodial interrogation by the police prior to the giving of Miranda

warnings by Special Agent Vincent at the apartment."  Tr. 10/30/07 at 74.

b.     **Waiver of *Miranda* Rights**

Next, the Court found that defendant waived his <u>Miranda</u> rights, and that this waiver was knowing, voluntary, and intelligent.  Tr. 10/30/07 at 70-73.  The Court began by noting that defendant acknowledged on the advice of rights forms presented to him prior to each interview at the Plymouth County Police Department that he was willing to waive his <u>Miranda</u> rights and give the detectives a "voluntary statement."  <u>Id.</u> at 70; Gov't Ex. 3, 5.  The Court then rejected each of defendant's arguments on voluntariness in turn.

First, the Court stated that it did not find defendant's assertions that he was under the influence of drugs and/or alcohol (and thus incapable of giving a valid waiver) credible.  Tr. 10/30/07 at 70.  The Court explained that defendant's statements were "laced with inconsistencies" and emphasized that defendant's intoxication claim was contradicted by his ability to give the interviewing detectives an extremely detailed account of the two robberies.  <u>Id.</u> The Court also noted that defendant's self-serving testimony claiming inability to give a valid waiver due to intoxication was countered by the testimony of two professional law enforcement agents, Special Agents Vincent and Lash, "who testified they observed the defendant, he gave detailed accounts of the two robberies, [and] they saw no evidence of any effects of any drug use or alcohol consumption."  <u>Id.</u> at 72.

Second, the Court rejected defendant's claim that law enforcement agents coerced him into giving inculpatory statements.  <u>Id.</u> at 73.  The Court first found that "none of the statements attributed to the law enforcement officers by the defendant amounted to conduct which would render the statements given by the defendant to be involuntary."  <u>Id.</u>  The specific statements that defendant attributed to the law enforcement agents in his testimony were (1) that if he

[defendant] told them [the officers] something, they would let him go home and (2) that he "was looking at 40-some years and if [he] didn't come up with something that [he] was going to get it because Mr. Postell was already in custody and he was telling them what they wanted to know." Tr. 10/29/07 at 117-19; see also Def.'s Mem. of Law at 4.  The Court concluded that, even if it believed that the law enforcement agents interviewing defendant made these statements, "the statements were within the limits of proper interrogation techniques" used by law enforcement. Tr. 10/30/07 at 73.  Further, the Court found credible the testimony of Special Agents Vincent and Lash that "no such statements [were] made, no promises were given."  Id.

      c.      **Request for Counsel**

As to defendant's alleged requests for counsel, the Court found that none of defendant's alleged requests amounted to an unambiguous statement that he wanted an attorney such as would trigger Miranda rights and require a cessation of questioning.  Tr. 10/30/07 at 75.  The Court also stated that it did not credit defendant's testimony that he requested an attorney and did credit the testimony of Special Agents Vincent and Lash that "had defendant asked for an attorney he would have been provided an attorney."  Id. at 75-76.

      d.      **Probable Cause to Arrest**

As to defendant's claim in his Omnibus Pre-Trial Motions that his post-arrest statements to police should be suppressed due to lack of probable cause for his arrest, the Court found that, under "the totality of the circumstances, there was probable cause to arrest."  Id. at 76.

      3.      **Expansion of the Court's Ruling from the Bench**

The Court stated at the October 30, 2007 hearing, and in its Order of the same date, that it would "supplement this Order and expand its ruling made from the Bench on October 30, 2007,

with a written opinion in the event defendant files a Notice of Appeal."  Order of October 30,

2007 (Doc. No. 126); Tr. 10/30/07 at 65.  Defendant filed a Notice of Appeal on March 28, 2008,

prompting the issuance of this Memorandum and Order.

**III.    DISCUSSION**

**A.    <u>Motion for Suppression of Physical Evidence</u>**

**1.    *<u>Franks</u>* <u>Hearing</u>**

At the beginning of the Suppression Hearing, defense counsel stated his intention to

question Special Agent Vincent about representations in the supporting affidavits for the search

warrants to find out "[w]here that information came from, whether there's [sic] any

misrepresentations in there, whether there's [sic] any exaggerations in there, whether there's [sic]

any untruths in there."  Tr. 10/29/07 at 5.  The Government asked the Court to prohibit defense

counsel from pursuing this line of questioning because defendant's written submissions in

support of the Motion for Suppression of Physical Evidence did not raise a challenge to the

affidavits on this ground.  <u>Id.</u>  The Court agreed with the Government that defendant was raising

a challenge to the affidavits that was not presented in the briefs and pointed out that defense

counsel was, in essence, "asking for a <u>Franks</u> hearing." <u>Id.</u> at 7.  The Court decided that it was

"not going to preclude a <u>Franks</u> hearing," but stated that if the Government needed additional

time to prepare its response to defendant's <u>Franks</u> allegations, such time would be given.  <u>Id.</u>

The Government chose to "go ahead and put the affiant on to testify with respect to a <u>Franks</u>

hearing," <u>id.</u>, and defense counsel proceeded to question Special Agent Vincent about the source

and accuracy of various statements contained in the affidavits.  <u>Id.</u> at 26-37.

As the Court stated in its ruling from the Bench on October 30, 2007, defendant was not entitled to a <u>Franks</u> hearing.  Tr. 10/30/07 at 66.  In <u>Franks v. Delaware</u>, the Supreme Court held that:

> Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

438 U.S. at 155-56.

Defense counsel's questioning of Special Agent Vincent regarding statements in the affidavits failed to uncover evidence of any "misrepresentations,"  "exaggerations," or "untruths" by Special Agent Vincent as the affiant.  Tr. 10/29/07 at 5, 66.  Thus, although defendant was given a <u>Franks</u> hearing, there was no need to do so.

### 2. Knock-and-Announce Rule

For the reasons set forth at the Suppression Hearing and further explained below, defendant is not entitled to have physical evidence seized from his apartment suppressed on the ground that the agents executing the search failed to abide by the knock-and-announce rule.

Under the Fourth Amendment and 18 U.S.C. § 3109, a law enforcement officer executing a search warrant at a private dwelling generally must knock and announce his authority and purpose before entering, and may forcibly enter after doing so only if "he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."  18 U.S.C. § 3109; <u>United States v. Banks</u>, 540 U.S. 31 (2003).  The length of time that law enforcement agents must wait after they knock and announce before forcibly entering the premises is subject to a reasonableness standard.  <u>Id.</u> at 35.

-19-

At the Suppression Hearing, the Court stated that it found credible the testimony of Special Agent Vincent that the law enforcement agents dispatched to execute the search warrant for defendant's residence on the morning of October 25, 2006, "knocked, announced, waited approximately 45 seconds and then entered." Tr. 10/30/07 at 67.  The Court further found that there was no evidence presented which contradicted this version of events.  Id.

In Banks, the Supreme Court held that a 15-20 second wait was reasonable and satisfied the requirements of the Fourth Amendment and 18 U.S.C. § 3109 when the officers feared that drug evidence might be lost upon further delay.  540 U.S. at 39, 43.  Here, Special Agent Vincent testified that the agents decided to breach the door after waiting 45 seconds with no answer because they feared "someone in there in a violent crime could be arming themselves or preparing something that could be of danger to the officers executing the search warrant" and believed that there was a "likelihood that someone could be disposing of evidence that could be destroyed."  Tr. 10/29/07 at 13.  Considering that the underlying crime was armed bank robbery, these concerns were legitimate, and a wait of 45 seconds, 25-30 seconds longer than the wait approved of in Banks, was reasonable.  No violation of the Fourth Amendment or 18 U.S.C. § 3109 occurred to justify suppression of physical evidence seized from defendant's home.

Moreover, as the Court stated at the Suppression Hearing, under the Supreme Court opinion in Hudson v. Michigan, 547 U.S. 586 (2006), even if there was a violation of the knock-and-announce rule, suppression of the physical evidence seized from defendant's apartment still would not be warranted.  Tr. 10/30/07 at 67.  In Hudson, the Supreme Court held that the knock-and-announce rule has never protected "one's interest in preventing the government from seeing or taking evidence described in a warrant," that the social costs of exclusion for violations of the

knock-and-announce rule outweigh the benefits of deterrence, and thus that "[r]esort to the

massive remedy of suppressing evidence of guilt" for violations of the knock-and-announce rule

is "unjustified."  547 U.S. at 594, 599.  Under this rule, a violation of the knock-and-announce

rule by the agents executing the search warrant at defendant's apartment, if the Court were to find

that one occurred, still would not trigger suppression of the physical evidence found in

defendant's apartment.  Thus, to the extent that defendant's Motion for Suppression of Physical

Evidence is based upon an alleged violation of the knock-and-announce rule, defendant's Motion

must fail.

     **3.**     <u>**Probable Cause**</u>

For the reasons set forth at the Suppression Hearing and expanded below, suppression of

physical evidence seized from defendant's apartment and automobile is not warranted on the

ground that the affidavits supporting the search warrants lacked "probable cause to believe that

any evidence of a crime would be found within the defendant's apartment or automobile."  Def.'s

Omnibus Pre-Trial Mot. at 3.

Probable cause is determined based on the "totality of the circumstances," taking into

consideration the "factual and practical considerations of everyday life on which reasonable and

prudent men, not legal technicians, act."  <u>Illinois v. Gates</u>, 462 U.S. 213, 230-31 (1983) (internal

citation omitted).  "Probable cause can be, and often is, inferred by 'considering the type of

crime, the nature of the items sought, the suspect's opportunity for concealment and normal

inferences about where a criminal might hide stolen property.'" <u>United States v. Jones</u>, 994 F.2d

1051, 1056 (3d Cir. 1993) (citing <u>United States v. Jackson</u>, 756 F.2d 703, 705 (9th Cir. 1985)).

As the Supreme Court explained in <u>Gates</u>, the magistrate judge and reviewing court have clearly defined duties with respect to the determination of probable cause:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed.

462 U.S. at 238-39 (citing <u>Jones v. United States</u>, 362 U.S. 257, 271 (1960)).

As stated by the Court at the Suppression Hearing, a review of the affidavits in this case convinces the Court that Magistrate Judge Hart had a "substantial basis" for concluding that there was probable cause to issue the search warrants.  Tr. 10/30/07 at 69; <u>Gates</u>, 462 U.S. at 239. The affidavits were based largely upon statements made by Alfreddie Postell, one of defendant's co-conspirators, to Special Agent Vincent and other investigators.  <u>See</u> Gov't Ex. 1; Gov't Ex. 2. Postell implicated himself in his statement and provided a very detailed account of the robbery of the Nova Savings Bank, including "numerous facts that would not be known to anyone other than investigators and persons who had direct knowledge of the robbery of the Nova Savings Bank." Gov't Ex. 1, ¶ 8; Gov't Ex. 2, ¶ 8.

The fact that Postell's statement was contrary to his own interest and the highly detailed nature of his account both establish the reliability of the statement.  Further, as the affidavits state, investigating agents were able to verify information provided by Postell, including that defendant owned the vehicle Postell identified as the getaway car provided by defendant for the robbery and the address of defendant's apartment, which Postell identified as the location where the men divided the money from the Nova Savings Bank robbery.  Gov't Ex. 1, ¶¶ 9, 11-13;

Gov't Ex. 2, ¶¶ 9, 11-13.  The combination of these factors - the initial indications of reliability in Postell's statement and the ability of the investigating agents to further verify the accuracy of various details of Postell's statement - show that Magistrate Judge Hart had a "substantial basis" for his probable cause determination.  Gates, 462 U.S. at 239.   Thus, suppression of physical evidence seized from defendant's apartment and automobile is not warranted based on an alleged absence of probable cause.

Finally, even if the affidavits offered in support of the Government's search warrant applications did not establish probable cause, the Court finds that the reliance placed on the warrants by the law enforcement agents executing the search was objectively reasonable.  Thus, under United States v. Leon, 468 U.S. 897 (1984), suppression of the physical evidence is not warranted in any event.

In Leon, the Supreme Court held that law enforcement officers may rely on a magistrate's probable cause determination so long as such reliance is "objectively reasonable" and the warrant is not "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" Leon, 468 U.S. at 922-23 (citing Brown v. Illinois, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)).  Even if the Court did not find that the affidavits submitted to the magistrate judge contained probable cause, the affidavits were not "so lacking in indicia of probable cause" that the agents' belief in the existence of probable cause was "entirely unreasonable."  Id.  Thus, suppression of the physical evidence seized from defendant's apartment and automobile is not warranted.

**B.**    **Motion for Suppression of Statements**

    **1.**    ***Miranda* Warnings**

As stated by the Court at the Suppression Hearing, there are no grounds for suppressing defendant's statements to law enforcement agents based on a failure to give Miranda warnings. At the Suppression Hearing, the Court found that Miranda warnings were given to defendant on three separate occasions - once by Special Agent Vincent at defendant's apartment and twice at the Plymouth County Police Department (before each interview of defendant by law enforcement agents) - and thus suppression of defendant's statements for failure to give Miranda warnings was not warranted.  Tr. 10/30/07 at 70.  While giving his testimony, defendant admitted that Special Agent Vincent read him his Miranda warnings upon the discovery of the bank straps.  Tr. 10/29/07 at 106.  Defendant also signed advice of rights forms indicating that he had been advised of his constitutional rights prior to each interview at the Plymouth County Police Department.  Gov't Ex. 3, 5.  Finally, Special Agents Vincent and Lash testified to the fact that defendant had been read his Miranda rights prior to any custodial questioning at the apartment and police station, respectively.  Tr. 10/29/07 at 16; Id. at 51, 63.  Under these circumstances, suppression of defendant's custodial statements to law enforcement agents for failure to give Miranda warnings is not warranted.

At the Suppression Hearing, the Court also heard testimony about a conversation between defendant and Special Agent Vincent which took place prior to Special Agent Vincent finding the bank straps and the reading to defendant of his Miranda warnings.  First, Special Agent Vincent testified that after securing the premises, he told defendant that he was free to leave, but that defendant chose to remain.  Tr. 10/29/07 at 14-15.  Special Agent Vincent testified that his

subsequent conversation with defendant prior to the discovery of the bank straps and the subsequent reading of the Miranda warnings covered "his biographical information, where he lived, . . . a number of things relative to education and relatives, date of birth, Social Security number and things like that." Id. at 15. While defendant testified that he was never told that he was free to leave, Tr. 10/29/07 at 113, the Court credits Special Agent Vincent's testimony and not defendant's. Further, defendant acknowledged that he was told at the beginning of the search that he was not under arrest and was not told that he was "under arrest" until after the discovery of the bank straps. Id. at 102, 106. As the Court stated at the Suppression Hearing, see Tr. 10/30/07 at 74, it finds credible Special Agent Vincent's testimony about when defendant was subject to custodial detention and when he was not. In light of this testimony, the Court concludes that there was no custodial interrogation of defendant prior to the giving of Miranda warnings such as to trigger suppression of defendant's statements. Miranda v. Arizona, 384 U.S. 436, 478-79 (1966).

## 2.      Waiver of *Miranda* Rights

As the Court found at the Suppression Hearing, defendant waived his Miranda rights, and this waiver was knowing, voluntary, and intelligent. Tr. 10/30/07 at 70-73. The Court will not suppress defendant's post-arrest statements to law enforcement agents on this ground.

The inquiry for determining whether a waiver of Miranda rights is voluntary, knowing, and intelligent is made under the Due Process Clause. Colorado v. Connelly, 479 U.S. 157, 163 (1986). The inquiry has two dimensions:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both

the nature of the right being abandoned and the consequences of the decision to abandon it.

Moran v. Burbine, 475 U.S. 412, 421 (1986).  "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."  Id. (Citing Fare v. Michael C., 442 U.S. 707, 725 (1979)).   The Government must prove waiver of Miranda rights by a preponderance of the evidence.  Connelly, 479 U.S. at 168.

At the Suppression Hearing, the Court found that defendant acknowledged on the advice of rights forms presented to him prior to each interview at the Plymouth County Police Department that he was willing to waive his Miranda rights and give the detectives a "voluntary statement."  Tr. 10/30/07 at 70; Gov't Ex. 3, 5.  As held by the Supreme Court in North Carolina v. Butler, 441 U.S. 369, 373 (1979), an express written waiver of one's Miranda rights is "usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver."  Moreover, as stated by the Court at the Suppression Hearing and further explained below, these waivers of defendant's Miranda rights were voluntary and suppression of defendant's statements to law enforcement agents is not warranted.

### a.    Intoxication

In support of his Motion for Suppression of Statements, defendant testified at the Suppression Hearing that he was unable to give a knowing, voluntary, and intelligent waiver of his Miranda rights because he had consumed alcohol, smoked marijuana, and taken an Ecstacy pill in the hours prior to his arrest.  Tr. 10/29/07 at 108-10, 128.  Defendant specifically testified that he was still feeling the effects of the marijuana at the time of his first interview at the

Plymouth County Police Department.  Id. at 145-46.  Defendant admitted, however, that he was not under the influence of drugs or alcohol by the time of his second interview.  Id. at 146-47.

In response to defendant's testimony, Special Agent Vincent testified that he observed and spoke to defendant during the search of defendant's apartment and that defendant neither stated that he was under the influence of drugs or alcohol nor appeared to be under the influence of drugs or alcohol.  Id. at 17-18.  Likewise, Special Agent Lash testified that he observed defendant at the time of the first interview at the Plymouth County Police Department and that defendant did not appear to be under the influence of drugs or alcohol.  Id. at 54.

As stated at the Suppression Hearing, the Court does not find defendant's assertions that he was under the influence of drugs and/or alcohol (and thus incapable of giving a valid waiver) credible.  Tr. 10/30/07 at 70.  Defendant's statements at the Suppression Hearing were "laced with inconsistencies" and his intoxication claim is contradicted by the fact that he was able to give the interviewing detectives an extremely detailed account of the two robberies.  Id.

In United States v. Harris, 44 F.3d 1206, 1210 (3d Cir. 1995), the Third Circuit upheld a district court's finding that there was "no credible evidence" that the defendant was under the influence of alcohol, and thus unable to give a valid waiver of his Miranda rights, despite the defendant's testimony that "he had consumed forty ounces of 'Old English' before he surrendered himself and that the effects of this consumption had not dissipated when he decided to confess."  Similarly, in United States v. Haddon, 927 F.2d 942, 946 (7th Cir. 1991), the Seventh Circuit upheld a district court's decision denying a motion to suppress a written statement on intoxication grounds where the only evidence of intoxication was the defendant's "own (self-serving) testimony" that he was "under the influence of prescription medication" and

where two FBI agents who conducted the interview with the defendant testified that he did not manifest "any indicia of an intoxicated state" during the interview.

As in Harris and Haddon, the only evidence of intoxication in this case was defendant's self-serving testimony to that effect.  Countering defendant's testimony was the testimony of two FBI agents, Special Agents Vincent and Lash, who testified they observed defendant and saw no evidence of any effects of any drug use or alcohol consumption.  Under these circumstances, the Court finds no credible evidence upon which to conclude that defendant was unable to give a valid waiver of his Miranda rights due to intoxication.

**b.    Coercion**

As stated at the Suppression Hearing, the Court also rejects defendant's claim that law enforcement agents coerced him into giving inculpatory statements.  See Tr. 10/30/07 at 73.  In his Motion to Suppress Statements and during his testimony at the Suppression Hearing, defendant alleged that the law enforcement agents who interviewed him at the Plymouth County Police Department coerced him into giving a statement by telling him (1) that if he told them something, they would consider releasing him on bail / letting him go home and (2) that he "was looking at 40-some years and if [he] didn't come up with something that [he] was going to get it because Mr. Postell was already in custody and he was telling them what they wanted to know." Tr. 10/29/07 at 117-19; Def.'s Mem. of Law at 4.  Special Agent Lash testified that defendant was told after he signed the advice of rights waiver form that "it would be in his best interests, based on the evidence at this point, to speak with" the agents, but that he did not recall any of the interrogating agents telling defendant that "there was someone in custody presently who had already implicated him and therefore it would be beneficial to him to give a statement."  Tr.

10/29/07 at 72, 76-77.  Further, Special Agent Lash testified that he did not hear any agent tell defendant that "if he gave a statement he would be allowed to go home" or that "the matters under investigation were capable of sending him to jail for 40 years or more."  Id. at 81.  Because the Court credits Special Agent Lash's testimony, not defendant's, it finds that law enforcement agents never made any coercive statements to defendant such as to render his decision to waive his Miranda rights and to give a statement involuntary.

Further, as the Court stated at the Suppression Hearing, even if the law enforcement agents interviewing defendant made the statements that defendant alleged they made, "the statements were within the limits of proper interrogation techniques" used by law enforcement.  Tr. 10/30/07 at 73.  In Connelly, 479 U.S. at 167, the Supreme Court held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment."  In rejecting the defendant's coercion argument, the Court noted that the cases in which courts had previously found involuntariness all "focused upon the crucial element of police overreaching."  Id. at 163.  Examples of such overreaching cited by the Court involved extreme police wrongdoing, such as interrogation of a suspect "for over 18 hours without food or sleep" (Greenwald v. Wisconsin, 390 U.S. 519 (1968)); incommunicado interrogation of a suspect "in a closed cell without windows, limited food, and coercive tactics" (Davis v. North Carolina, 384 U.S. 737 (1966)); and interrogation of a suspect by "relays of officers for 36 hours without an opportunity for sleep" (Ashcraft v. Tennessee, 322 U.S. 143 (1944)).  Connelly, 479 U.S. at 163 n.1.

As the Third Circuit has stated, although it is possible to find involuntariness based on psychological coercion, "it is generally recognized that the police may use some psychological

-29-

tactics in eliciting a statement from a suspect." Miller v. Fenton, 796 F.2d 598, 603-05 (3d Cir. 1986). "The question to be answered when such tactics are used is whether they 'were so manipulative or coercive that they deprived [the suspect] of his ability to make an unconstrained, autonomous decision to confess.'" United States v. Griggie, 105 Fed. App'x 431, 435 (3d Cir. 2004) (citing Miller, 796 F.2d at 605). An investigator may "play on the suspect's sympathies or explain that honesty might be the best policy for a criminal who hopes for leniency from the state." Miller, 796 F.2d at 605 (citing Rachlin v. United States, 723 F.2d 1373, 1378 (8th Cir. 1983); United States v. Vera, 701 F.2d 1349, 1363-64 (11th Cir. 1983)).

The statements that defendant alleges the interrogating agents made to him - that if he told them something, they would consider releasing him on bail / letting him go home, and that he "was looking at 40-some years and if [he] didn't come up with something that [he] was going to get it because Mr. Postell was already in custody and he was telling them what they wanted to know" (Tr. 10/29/07 at 117-19; Def.'s Mem. of Law at 4) - fall within the permissible bounds of psychological persuasion. These statements, playing on defendant's desire to go home and informing defendant of the possible repercussions of conviction, were not "so manipulative and coercive that they deprived [defendant] of his ability to make an unconstrained, autonomous decision to confess." Miller, 796 F.3d at 605. Similarly, the statement Special Agent Lash admits was made to defendant - that "it would be in his best interests, based on the evidence at this point, to speak with" the agents (Tr. 10/29/07 at 72) - is clearly within the bounds of permissible persuasion. Miller, 796 F.3d at 605. Thus, because the Court finds no impermissible police coercion, it will not suppress defendant's custodial statements to law enforcement agents on this ground.

-30-

3.     **Request for Counsel**

For the reasons set forth at the Suppression Hearing and further explained below, defendant is not entitled to have his post-arrest statements to law enforcement agents suppressed on the grounds that the agents failed to heed a request for counsel.

In support of his Motion for Suppression of Statements, defendant testified at the Suppression Hearing that law enforcement agents continued to question him, at his apartment and at the Plymouth County Police Department, after he stated that he did not want to answer any questions until he learned whether or not his mother was going to retain an attorney for him.  See Tr. 10/29/07 at 112, 114, 124.  Special Agent Lash, however, testified that defendant never stated that "he wanted to have the benefit of a lawyer that his mother was going to retain for him," nor directly asked for an attorney.  Tr. 10/29/07 at 74, 80.  As stated at the Suppression Hearing, the Court does not credit defendant's testimony that he requested an attorney and does credit the testimony of Special Agent Lash regarding the alleged request for an attorney. Tr. 10/30/07 at 75-76.  Since the Court credits Special Agent Lash's testimony, and not defendant's, it finds no violation of defendant's Miranda rights based on a failure to heed a request for an attorney, and thus declines to suppress defendant's statements to law enforcement agents on this ground.

Moreover, as the Court stated in its oral ruling, even if the Court did credit defendant's testimony regarding his desire for an attorney, none of defendant's alleged requests for counsel amounted to an unambiguous and unequivocal statement that he wanted an attorney such as would trigger Miranda rights and require a cessation of questioning.  Tr. 10/30/07 at 75.  In Davis v. United States, 512 U.S. 452, 461 (1994), the Supreme Court held that "after a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning until

and unless the suspect clearly requests an attorney." The Court further explained that "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." Id. at 459 (Emphasis original).

_____In Davis, the Supreme Court saw "no reason to disturb" the lower courts' finding that a suspect's remark "maybe I should talk to a lawyer" was not a request for counsel such as to require the cessation of questioning. Id. at 462. Similarly, in United States v. Pelle, 2006 WL 2528552, at *7-8 (D.N.J. Aug. 31, 2006), the United States District Court for the District of New Jersey held that a suspect's alleged statement when presented with an advice of rights form that "I don't want to sign anything right now. I think you people should leave until I consult with my attorney," did not amount to a "clear assertion of the right to counsel."

Defendant's alleged statements that he was "going to wait and see if his mother got [him] . . . an attorney," Tr. 10/29/07 at 112, and that he wanted to call his mother to see if she retained an attorney for him, id. at 124, likewise did not amount to clear, unambiguous requests for counsel which would trigger Miranda rights and require cessation of questioning under Davis. Suppression of defendant's statements to law enforcement agents is not warranted on this ground.

_____**4.     Probable Cause to Arrest**

At the Suppression Hearing, the Court rejected defendant's claim in his Omnibus Pre-Trial Motions that his post-arrest statements to police should be suppressed due to lack of probable cause for his arrest. Tr. 10/30/07 at 76. As stated by the Court at the Suppression

Hearing and as explained below, under "the totality of the circumstances, there was probable cause to arrest [defendant]."  Id.

_____"Police have probable cause to arrest if the circumstances are sufficient to cause a prudent person to believe that a crime has been committed and the person to be arrested committed it." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).  "Probable cause is determined by the 'totality of the circumstances.'" Id. (Citing Illinois v. Gates, 462 U.S. 213, 230-31 (1983)).  "We must assess the 'knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest' in determining if probable cause existed."  Stubbs, 281 F.3d at 122 (Citing United States v. Harris, 482 F.2d 1115, 1117 (3d Cir. 1973)).

In this case, the totality of the circumstances establish that the police had probable cause to arrest defendant on October 25, 2006.  Prior to arresting defendant, Special Agent Vincent found a bank strap in defendant's apartment that was consistent with the straps used by the American Heritage Federal Credit Union, and two other money straps. Tr. 10/29/07 at 15-16. The agents also found "a fairly large sum of money, approximately $2,600" in a pair of pants.  Id. at 15.  This evidence corroborated the statements made by Alfreddie Postell to Special Agent Vincent and other investigators that defendant had participated in the robbery of the Nova Savings Bank and that the participants in the robbery had split up the money at defendant's apartment.  Gov't Ex. 1 ¶¶ 8-11; Gov't Ex. 2 ¶¶ 8-11.  The totality of these circumstances - the combination of Postell's detailed statement to Special Agent Vincent and other investigators and the physical evidence found in defendant's apartment - gave law enforcement agents probable cause to arrest defendant on October 25, 2006.  Stubbs, 281 F.3d at 122.  Thus, the Court will not

-33-

suppress defendant's statements to law enforcement agents based on a lack of probable cause to arrest.

## IV.    CONCLUSION

For the foregoing reasons, the Court denies defendant's Omnibus Pre-Trial Motions (Motion for Suppression of Physical Evidence and Motion for Suppression of Statements).

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

**UNITED STATES OF AMERICA**        :

                                    :

**v.**                              :  **CR NO. 06-715-1**

                                    :

**SYEED BRIGGS**                    :

_____   :

**O R D E R**

      **AND NOW**, this 11th day of April, 2008, upon consideration of defendant Syeed

Briggs's Omnibus Pre-Trial Motions (Motion for Suppression of Physical Evidence and Motion

for Suppression of Statements) (Doc. No. 109, filed October 12, 2007) and supporting

Memorandum of Law (Doc. No. 110, filed October 12, 2007), the Government's Omnibus

Response in Opposition to Defendant Syeed Briggs's Pretrial Motions (Doc. No. 113, filed

October 19, 2007), and defendant's Reply Memorandum to the Government's Omnibus

Response in Opposition to Defendant's Pre-Trial Motions (Doc. No. 120, filed October 26,

2007), following a hearing on October 29 and 30, 2007, for the reasons stated at the Hearing on

October 30, 2007, and amplified in the attached Memorandum, **IT IS ORDERED** that

defendant's Omnibus Pre-Trial Motions (Motion for Suppression of Physical Evidence and

Motion for Suppression of Statements) (Doc. No. 109, filed October 12, 2007) are **DENIED**.

              **BY THE COURT:**

              **/s/ Honorable Jan E. DuBois**

              **JAN E. DuBOIS, J.**