IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES** | **CRIMINAL ACTION** |
| v. | |
| **SYEED BRIGGS** | **NO.  06-715** |

**DuBOIS, J.**                                                                                         **March 8, 2021**

## M E M O R A N D U M

### I.     INTRODUCTION

Moving for a reduced sentence pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), Syeed Briggs, an inmate at FCI Fort Dix, contends that the unduly harsh nature of his sentence—illuminated by the disparity between its length and the current mandatory minimum for identical convictions—and several other factors related to his rehabilitation present "extraordinary and compelling reasons" meriting a sentence reduction.  Presently before the Court is Briggs's *pro se* Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582 and First Step Act of 2018 (Document No. 305, filed November 11, 2020) ("*Pro Se* Motion"), amended by a counseled Amended Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Document No. 312, filed January 7, 2021) ("Amended Motion"), and the Government's Response to Motion for Compassionate Release Under 18 U.S.C. § 3582 and Request for Stay (Document No. 307, filed November 28, 2020).  For the reasons set forth below, the *Pro Se* Motion and the Amended Motion are granted[1] and the Government's Request

---

[1]      Ordinarily an amended motion filed by counsel supersedes a defendant's initial *pro se* motion.  In this case, however, because the *Pro Se* Motion references evidence not mentioned in the Amended Motion, which the Court deems relevant to the legal issues presented in both Motions, the Court considers the *Pro Se* Motion and the Amended Motion.

for Stay is denied. Briggs's sentence is reduced to time served, approximately 16 years after adjustment for good time credit.

II.     BACKGROUND

   A. Briggs's Underlying Offenses and 32-Year Sentence

In the fall of 2006, when Briggs was 26 years old, he and several companions robbed two banks at gunpoint. Presentence Report ("PSR") ¶¶ 11-12. During the first robbery, on September 28, 2006, Briggs drove the getaway car. *Id.* ¶ 11. The total amount stolen was $17,391.75. *Id.* During the second robbery, on October 16, 2006, Briggs waited at a nearby bus stop while his companions committed the robbery. *Id.* ¶ 12. The total amount stolen in the second robbery was $21,338. *Id.* No one was seriously injured during either robbery. *Id.*

On November 6, 2007, a federal grand jury in the Eastern District of Pennsylvania returned a five-count Superseding Indictment charging Briggs with conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371 (Count 1), armed bank robbery in violation of 18 U.S.C. § 2113(d) (Counts 2 and 4), and carrying and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1) (Counts 3 and 5). *Id.* ¶ 2. At trial that same month, a jury found Briggs guilty on all counts. *Id.* ¶ 3.

At sentencing, on March 18, 2008, the Court sentenced Briggs to, *inter alia*, 32 years imprisonment on the two § 924(c) counts and one day of imprisonment on the two armed robbery counts and the one conspiracy count. Sentencing Tr. at 28:11-23. At that time a first conviction under § 924(c) for carrying and using a firearm in furtherance of a crime of violence required, *inter alia*, a mandatory consecutive sentence of at least five years imprisonment on the first count, increased to at least seven years imprisonment if the defendant "brandished" the firearm. Second or successive § 924(c) convictions required consecutive sentences of at least 25

years imprisonment at that time, a practice known as "stacking." Applicable law in 2008 also treated a conviction as "second or subsequent," triggering a consecutive 25-year mandatory minimum, even if the first § 924(c) conviction was in the same case. *See Deal v. United States*, 508 U.S. 129, 132 (1993).

On the first § 924(c) count, the Court sentenced Briggs to a term of imprisonment of seven years because the jury determined that the firearm was "brandished" during the commission of the offense. PSR ¶ 11. With respect to the second § 924(c) count, the Court determined that, because of the first § 924(c) conviction, it was required under the statute to sentence Briggs to a "stacked" term of imprisonment of 25 years. Thus, under the statute, the Court, "with a great deal of reluctance," sentenced Brigs to 32 years imprisonment on the two § 924(c) convictions. Sentencing Tr. at 27:15-28:23. Finding this mandatory term excessive, the Court sentenced Briggs to a total of one day imprisonment on the two robbery convictions and the conspiracy conviction. *Id*. at 27:6-16. The Government did not object to this one-day sentence on the robbery and conspiracy convictions. *Id*.

At sentencing, the Court expressed concern over the unduly harsh nature of Briggs's sentence, stating, "all the goals of sentencing could have been accomplished had there been no mandatory minimum sentences with a sentence substantially below 32 years. . . ." Sentencing Tr. at 25:3-6. Addressing Briggs directly, the Court stated, "I want you to know that I think the sentence that I have to impose is a much longer sentence than I would otherwise impose but I have no, absolutely no leeway." *Id*. at 26:23-25. Referencing a similar case, *United States v. Ezell*, in which the Court had recently been required to impose a 132-year sentence for six "stacked" § 924(c) convictions arising out of Hobbs Act robberies, the Court explained, "I researched the case then and concluded I had no, just absolutely no discretion . . . I thought the

3

sentence was overly harsh." *Id*. at 25:16-18; *see United States v. Ezell*, 417 F. Supp. 2d 667, 671 (E.D. Pa. 2006), *aff'd* 265 F. App'x 70 (3d Cir. 2008).  The Court continued, "I updated that research in this case and concluded the same thing."  Sentencing Tr. at 25:18-19.

By Memorandum and Order dated February 11, 2021, the Court granted Jamal Ezell's Amended Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), and reduced his sentence to time served.  *See United States v. Ezell*, No. 02-815-01, 2021 WL 510293 (E.D. Pa. 2021).  The Court determined that the unduly harsh nature of Ezell's sentence, combined with other factors related to his rehabilitation and readiness to reenter society, constituted an "extraordinary and compelling" reason meriting release.  *Id.*  The substantial factual and legal similarities between *Ezell* and this case, which the Court identified in 2008, remain salient today.  Thus, the Court's decision with respect to Briggs's Motions is largely informed by its reasoning in *Ezell*.

### B.  Procedural Background

On November 11, 2020, Briggs filed a *pro se* Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582 and First Step Act of 2018 (Document No. 305).  On November 28, 2020, the Government filed a Response to Motion for Compassionate Release Under 18 U.S.C. § 3582 and Request for Stay (Document No. 307).  On January 7, 2021, Briggs filed a counseled Amended Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Document No. 312).  The Government responded on January 28, 2021 (Document No. 314).  The Motions are thus ripe for decision.

### III. DISCUSSION

#### A. Applicable Law

Briggs seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to the First Step Act, courts could consider compassionate release only upon motion of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A) (2012). However, the First Step Act granted federal prisoners the right to petition a court for compassionate release for "extraordinary and compelling reasons" after first filing a request for compassionate release with the prison warden. 18 U.S.C. § 3582(c)(1)(A)(i). Generally, "extraordinary" means "[b]eyond what is usual, customary, regular, or common," and a "compelling need" is a "need so great that irreparable harm or injustice would result if it is not met." *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020) (quoting *Extraordinary*, Black's Law Dictionary (11th ed. 2019)). A sentence reduction under § 3582(c)(1)(A)(i) must be consistent with "applicable policy statements" issued by the Sentencing Commission. *Id.*

"Extraordinary and compelling reasons," for purposes of § 3582(c)(1)(A)(i), are defined by a policy statement in § 1B1.13 of the United States Sentencing Guidelines, which cites the (A) medical condition, (B) age, (C) family circumstances of the defendant, and, (D) "reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," as determined by the BOP. U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). This policy statement, which was adopted before the First Step Act, does not account for the fact that defendants may now file

their own motions for compassionate release.[2]  Thus, as a majority of district courts and all of the courts of appeals that have spoken on the issue have held, § 1B1.13 is not an "applicable policy statement" in the context of defendant-filed motions.[3]  *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) ("join[ing] three other federal courts of appeals that recently have considered this question"); *United States v. Pollard*, No. CR 10-633-1, 2020 WL 4674126, at *5 n.5 (E.D. Pa. Aug. 12, 2020) (collecting district court cases).  Based on this authority, the Court concludes that when a defendant files a motion for compassionate release on his own behalf—as Briggs has done in this case—a district court may exercise its discretion to define "extraordinary and compelling reasons."  In deciding a motion for compassionate release, a court must also "consider[ ] the factors set forth in section 3553(a) to the extent that they are applicable" and evaluate whether the defendant poses a danger to the community.  §§ 3582(c)(1)(A) and 3142(g).

### B. The Government's Request for Stay

The Government has requested a stay of all proceedings until the Third Circuit resolves the pending appeal in *United States v. Andrews*, No. 20-2768 (3d Cir., filed Aug. 28, 2020).  As explained *infra*, Part III.C.iii., *Andrews* presents an issue identical to the issue raised in this case: whether the length of a sentence may qualify as an extraordinary and compelling reason to grant compassionate release.  Gov't Resp., 6.  The Government asserts that the outcome of the *Andrews* appeal may affect the Court's decision in this case and a stay would best serve the

---

[2] The Sentencing Commission currently lacks the quorum required to amend the Sentencing Guidelines. U.S. Sentencing Comm'n, Annual Report 2-3 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.  Thus, as many courts have recognized, the Guidelines have not been updated in response to the First Step Act.  *See, e.g.*, *United States v. Brooker,* 976 F.3d 228, 234 (2d Cir. 2020).

[3] The Court notes that "[t]he existing policy statement continues to govern BOP-filed motions for compassionate release." *McCoy*, 981 F.3d at 282 n.7 (citing *Brooker*, 976 F.3d at 235-36; *United States v. Jones*, 980 F.3d 1098, 1109-10 (6th Cir. 2020)).

interests of judicial economy and consistency. For the following reasons, the Court denies the Government's Request for Stay.

A district court has authority to issue a stay "where such a stay would be a proper exercise of discretion." *Rhines v. Weber*, 544 U.S. 269, 276 (2005); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). "The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708.

Although the Court recognizes the judicial economy interests at stake, such interests are outweighed by the potential prejudice that Briggs faces. As discussed *infra*, the Court determines that Briggs has presented extraordinary and compelling reasons for compassionate release and reduces his sentence to time served. Delay of this decision would greatly prejudice Briggs in light of the magnitude of his liberty interest at stake. Further, the multitude of cases involving issues identical to those presented in this case—including decisions by the Second, Fourth, Sixth and Seventh Circuits—provide ample authority upon which the Court draws in considering Briggs's Motion. *See United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020); *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *United States v. Jones*, 980 F.3d 1098 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020).

The Court thus concludes that the Government has not met its burden of establishing a need for a stay. Accordingly, the Government's Request for Stay is denied.

### C. Briggs's *Pro Se* Motion and Amended Motion[4]

#### i.   *Briggs Has Exhausted His Administrative Remedies*

A defendant may only petition a court for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) after (1) "fully exhaust[ing] all administrative rights to appeal a failure of the

---

[4]  Because the legal arguments presented by Briggs's *Pro Se* Motion are identical to those presented by his Amended Motion, the Court addresses both Motions together.

Bureau of Prisons to bring a motion on [his] behalf" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

On June 9, 2020, Briggs submitted his first request to the Warden. After 30 days passed and the request was not answered, he filed his *Pro Se* Motion. He subsequently submitted another request to the Warden on September 28, 2020, which has also gone unanswered. He filed his Amended Motion more than 30 days after submitting that request. Therefore, he has fulfilled the statutory exhaustion requirement and the Court may consider his *Pro Se* Motion and his Amended Motion.

### ii.     *Briggs's Unduly Harsh Sentence*

Emphasizing the disparity between Briggs's 32-year sentence and the 14-year sentence he would receive today, Briggs characterizes his sentence as unduly harsh. Am. Mot., 1. He contends that the grossly excessive nature of his sentence constitutes an extraordinary and compelling reason warranting a reduction under § 3582(c)(1)(A)(i). *Id*. at 12. The Court agrees with Briggs's characterization of his sentence. As the Court stated at sentencing, the sentence it was required to impose under the prior mandatory provisions of § 924(c) was "unduly harsh." Sentencing Tr. at 25:7-8. Although the Court recognizes the serious nature of Briggs's convictions, his 32-year sentence exceeds both the average sentence faced by those who commit similar crimes of violence and the length necessary to accomplish all of the goals of sentencing.[5]

Confirming the excessiveness of sentences like Briggs's, in 2018 Congress amended § 924(c). Section 403 of the First Step Act—entitled "Clarification of § 924(c)"—limited

---

[5]     *See* U.S. Sentencing Comm'n, Annual Report, Table 15 (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/Table15.pdf (reporting the average sentence for robbery convictions in 2019 as 109 months, approximately nine years).

"stacking" by imposing the 25-year mandatory minimum only in cases in which there was a prior § 924(c) conviction in a separate case that had already "become final." § 403(a), 132 Stat. at 5222.  In cases in which the defendant does not have a § 924(c) conviction in a prior case, the mandatory minimum consecutive § 924(c) sentence is five years, increased to seven years if the weapon is brandished, and ten years if it is discharged.  Because Briggs received his first § 924(c) conviction in this case, and because the jury determined that the firearm was brandished in both robberies, if convicted today, he would face a mandatory minimum sentence of 14 years.  PSR ¶ 11-12.  Given that Briggs has already served several months in excess of 14 years, he likely would have already been released if sentenced under the amended § 924(c).  Section 403, however, does not apply retroactively to sentences, like Briggs's, which were imposed before the enactment of the First Step Act.

     Having concluded that Briggs's sentence was indeed harsh, the Court examines whether, in combination with other factors related to Briggs's rehabilitation, the nature of Briggs's sentence constitutes an "extraordinary and compelling" reason meriting a sentence reduction under § 3582(c)(1)(A)(i).  See *Brooker*, 976 F.3d at 238 (2d Cir. 2020) (identifying "the injustice of [a] lengthy sentence" as a factor that may weigh in favor of a sentence reduction).  Joining several courts of appeals, and a growing consensus of district courts, this Court determines that it does.  See *McCoy*, 981 F.3d 271 (affirming district courts' finding of extraordinary and compelling circumstances based primarily on the severity of defendants' § 924(c) sentences); *United States v. Gunn*, 980 F.3d 1178 (vacating and remanding district court's denial of compassionate release motion based in part on the severity of defendant's § 924(c) sentence); *see also United States v. Clausen*, No. CR 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24,

2020) (finding extraordinary and compelling reasons based, in part, on defendant's "off the charts" sentence, "which is longer than Congress now deems warranted").[6]

### iii.    Section 403's Non-Retroactivity Does Not Defeat Briggs's Motion

The Government argues that because § 403 of the First Step Act does not apply retroactively, Briggs is not entitled to compassionate release based on the severity of his sentence. In seeking a reduced sentence under § 3582(c)(1)(A)(i), which would produce a result similar to retroactive application of § 403, the Government contends that Briggs is attempting to subvert Congress's clear intent. The district court in *United States v. Andrews* agreed with this reasoning, determining that by granting a compassionate release motion based in part on a lengthy § 924(c) sentence, a court would usurp the legislative role by effectively applying § 403 retroactively. 480 F. Supp. 3d 669, 680 (E.D. Pa. 2020) ("Granting a motion for compassionate release on the basis of the amendment to § 924(c) would supplant the retroactivity determination of courts—that the amendment should be applied retroactively on a case-by-case basis—for the retroactivity determination of Congress—that the amendment should not be applied retroactively."), *appeal filed*, *United States v. Andrews* (3d Cir. Sept. 4, 2020).

This Court disagrees with the result reached in *Andrews*. The *Andrews* reasoning overlooks the fundamental purpose of the compassionate release statute. Section 3582(C)(1)(A) implemented a "safety valve" that allows a court to reduce a sentence upon finding extraordinary and compelling reasons—often when such a reduction is not permitted by the statute under which the defendant was initially sentenced or any other law. *See McCoy*, 981 F.3d at 287 (quoting *United States v. Jones*, 2020 WL 5359636, at *8 (N.D. Cal. Aug. 27, 2020)). In

---

[6]    *See also United States v. Jones*, No. 19-CR-1947, 2020 WL 2526478, at *10 (N.D. Ill. May 18, 2020) (collecting cases); *United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289, at *2 (E.D. Wis. Aug. 7, 2020) (collecting cases); *United States v. Arey*, 461 F. Supp. 3d 343, 352 (W.D. Va. 2020) (collecting cases).

declining to give § 403 retroactive effect, Congress did not express a broad intent to foreclose other avenues of relief to the class of defendants sentenced under the pre-First Step Act § 924(c). Nor did it instruct courts to refrain from exercising their authority under § 3582(C)(1)(A) if, in so doing, they might coincidentally produce a result consistent with the retroactive application of § 403. Moreover, when Congress passed the original compassionate release statute in 1984, it provided that courts may consider whether a defendant is serving "an unusually long sentence" when ruling on a motion for a sentence reduction. *See Brooker*, 976 F.3d at 238 (citing S. Rep. No. 98-225, at 55-56 (1984)) (identifying "unusual cases" in which a sentence reduction is justified, including, "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence."). Thus, when a district court identifies a limited set of cases which present extraordinary and compelling reasons—even those based on the length of a defendant's sentence—it is not subverting the purpose of § 403, but rather is fulfilling the purpose of § 3582(C)(1)(A).

Unlike the court in *Andrews*, another court in this District rejected the Government's non-retroactivity argument, stating that "'[i]t is not unreasonable for Congress to conclude that not all defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve some defendants of those sentences on a case-by-case basis' through compassionate release." *Clausen*, 2020 WL 4260795, at *7 (quoting *United States v. Chan*, 2020 WL 1527895, at *6 (N.D. Cal. Mar. 31, 2020)). The Fourth Circuit adopted this reasoning, stating "we see nothing inconsistent about Congress's paired First Step Act judgments[.]" *McCoy*, 981 F.3d at 287. "As multiple district courts have explained, there is a significant difference between automatic vacatur and resentencing of an entire class of sentences . . . and allowing for the provision of individual relief in the most grievous cases." *Id*. As in all

11

sentencing matters, a court's discretion under § 3582(C)(1)(A) is broad, and is not constrained by § 403. *See Brooker*, 976 F.3d at 237-38 ("The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.' 28 U.S.C. § 994(t)").

In this case, the Court considers the 18-year disparity between the length of the original sentence Briggs received and what he would receive today a strong indication that his circumstances are "extraordinary and compelling." As set forth below, the Court conducts an individualized review of Briggs's circumstances and identifies this factor as one of several that weighs in favor of reducing his sentence. *See McCoy*, 981 F.3d at 287 (affirming the district courts' granting of compassionate release because they "relied not only on the defendants' § 924(c) sentences but on full consideration of the defendants' individual circumstances").

> iv. *18 U.S.C.§ 3553(a) Factors and the Fact That Briggs Does Not Pose a Danger to the Community Under 18 U.S.C. § 3142(g) Weigh in Favor of Compassionate Release*

The Court next "consider[s] the factors set forth in section 3553(a) to the extent that they are applicable" to Briggs's Motion. 18 U.S.C. § 3582(c)(1)(A). Under 18 U.S.C. § 3553(a), a court must "impose a sentence 'sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting § 3553(a)). Applicable § 3553(a) factors include: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant; (3) the kinds of sentences and sentencing ranges available; and (4) the need to avoid unwarranted sentence disparities among defendants committing similar offenses. *See United States v. Babbitt*, No. CR 18-384, 2020 WL 6153608,

at *10 (E.D. Pa. Oct. 21, 2020) (summarizing 18 U.S.C. § 3553(a) factors). Additionally, a court must find that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[7] U.S.S.G. § 1B1.13(2).

The Government does not contend that Briggs would be a danger if released or that the § 3553(a) factors counsel against a reduction. Based on the following evidence, the Court determines that Briggs's "history and characteristics" demonstrate his commitment to his rehabilitation and readiness to reenter society.[8] Additionally, in light of Briggs's relative youth at the time of his offenses and his minimal disciplinary record while in custody, the Court concludes that Briggs does not pose a danger to the community.

During his incarceration, as reflected in his transcript, Briggs has completed over 200 hours of education on various topics, including 69 hours of Release Preparation Programs, which are designed to prepare inmates for reentry into society. *Pro Se* Mot., Ex. IV. He worked as a laundry presser for seven years during his incarceration at FCI Bennetsville and held a position in food service for three years at FCI Fort Dix until he was laid off due to the COVID-19 pandemic. *Pro Se* Mot., 13. He has maintained strong ties with his family members, including his four children, and is eager to develop a greater presence in their lives. *Id*. at 4. His mother and step-father will provide him a home upon his release and his step-father has offered him a position in his landscaping business. Am. Mot., 20. Based on the evidence presented in Briggs's Motions, the Court determines that he has continually worked to better himself while in prison,

---

[7] Applicable § 3142(g) factors include, "the nature and circumstances of the offense," "the person's character, physical and mental condition, family ties, employment, . . . criminal history," "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).
[8] The Court has already discussed its view that Briggs's sentence far exceeds the length necessary to "reflect the seriousness of the offense, promote respect for the law, provide punishment, deter criminal conduct and protect the public from further crimes by the defendant." § 3553(a). Thus, in evaluating the applicable § 3553(a) factors, the Court focuses on "the defendant's history and characteristics."

and as a result he is prepared to reenter society. Accordingly, the Court concludes that the § 3553(a) factors weigh heavily in favor of a sentence reduction.

Briggs next contends that he is not a danger to the community under § 3142(g) because he has incurred only two infractions over the course of his incarceration, including no incidents of violence, and has not received an infraction since 2013. Am. Mot., 20; *Pro Se* Mot., Ex. VI. Briggs was relatively young at the time of the offenses of conviction—26 years old. He is presently 40 years old. The Court recognizes that young offenders who dedicate themselves to self-improvement while in prison have the potential to become fully rehabilitated upon release, significantly diminishing their likelihood of recidivating. In Briggs's case, his history of violence is limited to the three-week period during which the robberies that led to his convictions occurred. His significant efforts at rehabilitation have resulted in a minimal disciplinary record over his 14 years of incarceration, which supports the conclusion that he is unlikely to recidivate. Accordingly, the Court concludes that he does not pose a danger to the community under § 3142(g).

Briggs's offenses were serious. However, the Court concludes that Briggs has sufficiently demonstrated—based on his efforts in prison and statements in his *Pro Se* Motion— an understanding of the serious nature of his crimes, remorse for his actions, and a commitment to doing better. *See Pro Se* Mot., 12 ("Mr. Briggs makes no excuses for his unlawful role in those crimes. He is remorseful, contrite, and does not seek to justify, diminish, or detract from the seriousness of his offenses. And he unequivocally accepts responsibility for his criminal conduct."). These findings demonstrate that the objectives of sentencing, as outlined in §§ 3553(a) and 3142(g), have been accomplished in Briggs's case.

The Court therefore concludes that the severity of Briggs's sentence, combined with Briggs's marked rehabilitation and good behavior in prison, provides an extraordinary and compelling reason to grant Briggs's Motions. *See McCoy v. United States*, No. 2:03-CR-197, 2020 WL 2738225, at *6 (E.D. Va. May 26, 2020), *aff'd*, 981 F.3d 271 (4th Cir. 2020) ("Petitioner's relative youth at the time of the sentence, the overall length of the sentence, the disparity between his sentence and those sentenced for similar crimes after the First Step Act, and his rehabilitative efforts form an extraordinary and compelling basis for relief.").

> v.   *Briggs's Sentence is Reduced to Time Served*

Briggs asks the Court to reduce his sentence to time served, approximately 16 years after adjustment for good time credit. Aside from the legal arguments discussed *supra*—regarding the non-retroactivity of Section 403 and the interests of judicial economy and consistency—the Government presents no justification for Briggs's continued incarceration. The Court thus concludes that a reduction to time served is appropriate in Briggs's case on the ground that his time in prison has already accomplished all the goals of sentencing and his continued incarceration would serve no meaningful purpose.

Although Section 403 does not apply retroactively to Briggs, the fact that he has already served a longer sentence than that which Congress now deems sufficient to address convictions identical to Briggs's is instructive in the Court's evaluation of his individual circumstances. As the Court has already determined that Briggs demonstrates a readiness to reenter society and that he poses no danger to the community, his continued incarceration may even adversely affect Briggs's marked rehabilitation. *See* Valerie Wright, Ph.D., *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, THE SENTENCING PROJECT 7 (2010) (presenting findings from a study of a nationally representative sample of prisoners demonstrating "an

increased likelihood that lower-risk offenders will be more negatively affected by incarceration," and that "reduced sentences may reduce recidivism rates"). Further, Briggs has already served a longer sentence than the 13-year sentence of his co-defendant, Alfreddie Postell, who was charged with the same crimes as Briggs. Because Postell pled guilty, the Government vacated his second § 924(c) conviction, and he has already been released from custody. Am. Mot., 19; *see also United States v. Price*, No. CR 07-0152-06 (ESH), 2020 WL 5909789, at *7 (D.D.C. Oct. 6, 2020) (identifying as an extraordinary and compelling reason the fact that defendant's co-defendants had already been released). Accordingly, the interests of justice and consistency in sentencing, as well as the §§ 3553(a) and 3142(g) factors, counsel against Briggs's continued incarceration.

### IV. CONCLUSION

For the foregoing reasons, Briggs's *pro se* Motion for Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582 and First Step Act of 2018 and Amended Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) are granted. The Government's Request for Stay is denied. Briggs's sentence is reduced to time served, approximately 16 years after adjustment for good time credit. An appropriate order follows.